IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ROYAL FLUSH PLUMBING, INC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. |
| **YELLOW LION SOLUTIONS LLC,** | ) ) ) ) |
| Defendant. | ) |

# COMPLAINT

**Royal Flush Plumbing, Inc. ("Royal Flush"),** by and through its undersigned counsel, respectfully submits its Complaint against Defendant Yellow Lion Solutions, LLC ("Yellow Lion"), and shows the Court as follows:

## I.   INTRODUCTION

1. Royal Flush is a plumbing company that has been in business since 1982. In or around October 2019, Royal Flush retained Yellow Lion to design a web-based application to streamline Royal Flush's administrative procedures including scheduling, dispatching, inventory management, invoicing, payment collection, as well as metric collection and reporting (the "App"). The App was expected to be completed on a rolling basis, with the first application being

completed after 12 weeks and each subsequent application being completed every eight weeks thereafter, with an estimated total completion date of May 23, 2020.

2. As it turned out, Yellow Lion was either not willing to or not capable of the task of designing the App. By April 21, 2021, almost a year after the App's deadline, Yellow Lion had produced none of the deliverables identified by the Contract, or any usable software whatsoever, despite its repeated promises that the App was almost complete and its agreement to produce the App by a hard-deadline of April 9, 2021. By that time, Royal Flush had paid $76,345.16 to Yellow Lion.

3. Ultimately, Royal Flush was forced to abandon the App and demand a refund. Despite failing to deliver any useable software required under the Contract, let alone the completed App, Yellow Lion has refused to return the $76,345.16 it received from Royal Flush, or the confidential information Royal Flush gave Yellow Lion to help design the App. Thus, Royal Flush initiates this action to recover the $76,345.16 it paid to Yellow Lion, the confidential information it disclosed for the purposes of designing the App, and any other appropriate relief.

## II. THE PARTIES, JURISDICTION AND VENUE

4. Royal Flush Plumbing, Inc. is a Georgia Corporation with its principal place of business in Lilburn, Georgia. Thus, Royal Flush is a citizen of Georgia.

5. Yellow Lion Solutions, LLC is a limited liability company organized under the laws of Pennsylvania, located at 201 Canal Street, Phoenixville, PA 19460, and, upon information and belief, all of its members are individual or corporate citizens of Pennsylvania. Thus, Yellow Lion is a citizen of Pennsylvania.

6. Yellow Lion may be served at 201 Canal Street, Phoenixville, PA 19460.

7. This Court has personal jurisdiction over Yellow Lion, a representative of which personally appeared in Royal Flush's offices in Lilburn, Georgia, to advertise its services and convince Royal Flush to enter into the Contract, which is at issue in this case.

8. The Court has subject matter jurisdiction over Royal Flush's claims pursuant to 28 U.S.C. §§ 1332 and 1367, as there is complete diversity between the parties and the amount in controversy, including but not limited to any money Royal Flush paid Yellow Lion, exceeds $75,000.00, exclusive of interest, fees and costs. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as a substantial part of the actions giving rise to Royal Flush's claims occurred in this judicial district.

## IV. FACTUAL BACKGROUND

**A. The App**

10. On or around September or October 2019, a representative on behalf of Yellow Lion personally appeared in Royal Flush's office in Lilburn, Georgia, to give a presentation about designing the App, which was a web-based application to streamline Royal Flush's scheduling, dispatching, inventory management, invoicing, payment collection, as well as metric collection and reporting.

11. Upon information and belief, Yellow Lion knew or should have known that it was not capable of designing the App it described during its presentation.

12. Royal Flush was impressed by Yellow Lion's presentation and, reasonably relying on Yellow Lion's representation that it was capable of designing the App, agreed to enter into the Development and Service Contract (the "Contract") with Yellow Lion on or about October 11, 2019. (See Contract, attached hereto as Exhibit 1).

13. The Contract contains the following relevant terms:

> **2. STATEMENT OF WORK**
>
> Contractor shall perform and deliver the Project as set forth in the Statement of Work (aka appendix A, Proposal and Services Outline) issued against and subject to the terms and conditions of this Agreement.

The work which Contractor shall perform shall be specified in the Statement of Work–attached hereto as Appendix A –which will be written under the terms and conditions of this Agreement. The Statement of Work shall specify: (i) description of Services and Deliverables, (ii) schedule for Deliverables, and (iii) price and payment schedule.

14. According to Appendix A, Proposal And Project Outline (the "Project Outline"), referenced and incorporated in the Contract, the App was supposed to be comprised of three sub-applications ("Sub-Apps"):

   a. **Back-Office Application:** A web-based portal that will allow role-based access to administrative functionality such as user management, work order management, scheduling, customer management, and specified metrics reporting.

   b. **Technician Mobile Application:** A native Android app allowing field technicians real-time and offline access to their assigned jobs, schedules, inventory, and payment processing.

   c. **Customer Portal:** A web-based portal allowing registered customers to submit workorder requests, view and get updates on current requests, and make payments for completed jobs.

(*See* Proposal And Project Outline ("Project Outline"), attached hereto as Exhibit 2).

15. The App was also supposed to support six different user-types who could use the App for different purposes ("User-Types"):

   a. **Administrator:** Internal RFP users who can access the back-office Portal to author and manage specifier

  account, profile and contents. Administrator primarily use the Backoffice application through a web browser.

 b. **Customer service:** triage incoming requests and determine when to create work orders for onsite visits. Agents primarily use the Back-office application through a web browser.

 c. **Service managers:** track performance metrics and oversee service delivery, finding ways to increase efficiency and standardize processes. Service managers primarily use the Back-office application through a web browser.

 d. **Dispatchers:** review and schedule work orders, and assign them to resources on the schedule board through resource availability searches, and through a fully automated resource scheduling optimization add-in. Dispatchers primarily use the back-office application through a web browser.

 e. **Field Technicians:** manage their assigned work orders using the mobile app BOYD or supplied tablet, and perform maintenance and repairs onsite at customer locations.

 f. **Customers:** Access current jobs, submit service requests, view invoices and make payment online. Customers primarily use the Customer Portal application through a web browser.

16. The Project Outline further contained a deliverable timeline, which provided that the Sub-Apps would be completed in the following order: (1.) Back-Office Application; (2.) Technician Application; (3.) Customer Portal. Those three Sub-Apps would be completed according to the following timeline:

> A. **Deliverable Timing** - Given the intricacies of the applications, and the rolling deliveries we anticipate the first priority app delivery within 12 weeks of proposal approval and receipt of down payment. Each subsequent priority app we anticipate roughly an 8 week turnaround time. These estimates are based on the information that has been provided thus far, and do not account for potential scope creep.

(Ex. 2, Project Outline, at ¶ 3).  Accordingly, the entire Project should have been completed on or about May 23, 2020.

17. The Contract provides the following terms for accepting deliverables:

> **6. ACCEPTANCE**
>
> The Deliverables, if any, shall be deemed accepted by Customer upon completion of the following acceptance test:
>
> a. Immediately upon receipt of said Deliverables, Customer shall promptly perform testing of the Deliverables to confirm that the Deliverables perform in accordance with the documentation or other standards applicable thereto as set forth in the Statement of Work.
>
> b. Customer shall either promptly provide Contractor with written acceptance of the Deliverables, or deliver to Contractor a detailed written statement of nonconformities to be corrected prior to Customer's acceptance of the Deliverables. Unless otherwise agreed to in writing by the parties, Contractor will redeliver corrected Deliverables to Customer within a reasonable amount of time after receipt of such statement of nonconformities.

    c. Following redelivery of corrected Deliverables, a new acceptance test shall be immediately commenced by Customer. Any such written statement of nonconformities shall provide sufficient detail to enable Contractor to remedy the failure to conform to the Completion Criteria. If Customer fails to provide a written acceptance or a written statement of nonconformities within five (5) days of initial receipt of said Deliverables or such other mutually acceptable period as defined in the applicable Statement of Work, or within five (5) days of re-delivery of said corrected Deliverables or such other mutually acceptable period, the Deliverables shall be deemed immediately accepted by Customer.

18. The Price Estimate for the App was $92,000, 25% of which was to be paid before work started, and 25% due upon delivery of each Sub-App completed thereafter. (*Id.* ¶ 7.)

### B. Royal Flush Entrusts its Confidential Information to Yellow Lion

19. Yellow Lion advised Royal Flush that to develop the App, Yellow Lion needed to be given access to Royal Flush's confidential information including but not limited to its customer database and price book, which Royal Flush provided to Yellow Lion (the "Confidential Information"). Royal Flush delivered the Confidential Information to Yellow Lion for the sole purpose of developing the App, with the mutual understanding that the Confidential Information would be returned to Royal Flush thereafter.

### C. Yellow Lion Fails to Deliver the App

20. By August 14, 2020, almost three months after the estimated completion date for the entire App, Yellow Lion had not delivered any of the three Sub-Apps. While continuing to cooperate with Yellow Lion to design the App, Royal Flush voiced concerns that Yellow Lion may not be capable of completing the App. Yet, Yellow Lion insisted that it was capable and "offer[ed] a financial mitigation component to make up for these setbacks" under which Yellow Lion would complete the App for $73,600. Yellow Lion further advised that the Back-Office Application would be complete within two to three weeks and the other Sub-Apps would be delivered shortly thereafter.

21. Yellow Lion was unable to finish the Back-Office Application within two to three weeks after August 14, 2020, however, and went on to miss multiple deadlines that Yellow Lion promised to meet.

22. Ultimately, on February 8, 2021, about nine months after the App was supposed to be completed, Royal Flush advised that it needed a "definitive timeline" in which it would receive the completed App. (*See* Email Correspondence, attached hereto as Exhibit 3). Yellow Lion responded with what it described as a "conservative timeline," promising to complete the App by April 9, 2021. (*Id.*)

23.     Once again, however, Yellow Lion was unable to complete the App and failed to meet the April 9, 2021 deadline, and by that time had failed to deliver a single Sub-App, or any piece of usable software for that matter.

24.     By April 9, 2021, Royal Flush had paid $76,345.16 of invoices that Yellow Lion submitted to design the App.

**D. Yellow Lion Refuses to Refund Money Paid for the App**

25.     Faced with the unavoidable conclusion that Yellow Lion was not qualified to design the App it promised, on April 14, 2021, Royal Flush demanded that Yellow Lion refund the money it paid Yellow Lion for the App. Yellow Lion did not respond to Royal Flush's demand.

26.     On June 8, 2021, Royal Flush, through the undersigned counsel, reiterated its demand for Yellow Lion to refund the **$76,345.16** and to return the Confidential Information.

27.     To date, Yellow Lion has failed to refund any money it received from Royal Flush, return the Confidential Information, or even respond to Royal Flush's demands.

## V.    CAUSES OF ACTION

### COUNT ONE
### BREACH OF CONTRACT

28. Royal Flush realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

29. The Contract is a valid, enforceable, and binding agreement between Royal Flush and Yellow Lion.

30. Pursuant to the Project Outline, referenced and incorporated into the Contract, Yellow Lion was required to design and deliver the App to Royal Flush by May 23, 2020, or a reasonable time thereafter.

31. Royal Flush has fully complied with the Contract and has performed all conditions precedent to Royal Flush's performance, including paying $76,345.16 in invoices that Yellow Lion submitted to design the App.

32. Yellow Lion failed to design and deliver the App by May 23, 2020, or a reasonable time thereafter, including the "conservative timeline" of April 9, 2021, agreed to by Yellow Lion, pursuant to the Contract and the agreements between the parties.

33. Yellow Lion's failure to design and deliver the App by May 23, 2020, or a reasonable time thereafter, including the "conservative timeline" of April 9, 2021, agreed to by Yellow Lion, constitutes a material breach of the Contract and the agreements between the parties.

34. Royal Flush has suffered damages as a direct and proximate result of Yellow Lion's breach of the Contract and the agreements between the parties.

## COUNT TWO
## UNJUST ENRICHMENT

35. Royal Flush realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

36. Yellow Lion induced Royal Flush to pay $76,345.16 and provide Yellow Lion access to Royal Flush's Confidential Information by promising that it was capable of designing the App.

37. Despite receiving $76,345.16, Yellow Lion has failed to deliver the App, or any usable software.

38. Yellow Lion has been unjustly enriched and, pursuant to this unjust enrichment claim, is liable to Royal Flush for damages measured from the standpoint of Yellow Lion, upon which benefits were conferred.

## COUNT THREE
## NEGLIGENT MISREPRESENTATION

39. Royal Flush realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

40. Prior to entering into the Contract, Yellow Lion falsely represented that it was capable of designing the App and performing its obligations under the Contract.

41. Upon information and belief, Yellow Lion knew or should have known that it was not capable of designing the App and performing its obligations under the Contract.

42. Royal Flush had no reason to believe that Yellow Lion was incapable of designing the App and performing its obligations under the Contract, and it was reasonably foreseeable that Royal Flush would rely on Yellow Lion's false representations.

43. By making a false representation that it was capable of designing the App and performing its obligations under the Contract, Yellow Lion induced Royal Flush, which reasonably relied on Yellow Lion's representations, to enter into the Contract, pay Yellow Lion $76,345.16, and provide Yellow Lion with the Confidential Information.

## COUNT FOUR
## CONVERSION

44. Royal Flush realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

45. The Confidential Information was the product of Royal Flush's commercial operations and is Royal Flush's property. Royal Flush has the legal right to immediate and sole possession of the Confidential Information.

46. Yellow Lion obtained Royal Flush's Confidential Information by claiming that it was necessary to Yellow Lion's performance under the Contract.

47. Yellow Lion is currently in possession of the Confidential Information.

48. Royal Flush made a demand for Yellow Lion to return the Confidential Information, but Yellow Lion has refused to do so.

49. Yellow Lion's conversion of the Confidential Information directly and proximately caused and continues to cause Royal Flush damage in an amount to be determined. Royal Flush is entitled to injunctive relief against Yellow Lion to recover all Confidential Information and damages, as determined by the finder of fact, plus profits, court costs, and attorney's fees.

## COUNT FIVE
## ATTORNEY'S FEES AND EXPENSES OF LITIGATION

50. Royal Flush realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

51. Yellow Lion has acted in bad faith, has been stubbornly litigious, and has caused Royal Flush unnecessary trouble and expense.

52.     Yellow Lion acted in bad faith by refusing to refund Royal Flush the $76,345.16 it paid Yellow Lion to design the App, or even respond to Royal Flush's demands, despite Yellow Lion's failure to deliver any of the deliverables identified by the Contract or any usable software.

53.     As such, Royal Flush is entitled to attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## COUNT SIX
## PUNITIVE DAMAGES

54.     Royal Flush realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

55.     Yellow Lion's actions constitute willful conduct, malice, wantonness, oppression and the entire want of care which raises the presumption of conscious indifference to consequences. As such, Royal Flush is entitled to recover punitive damages from Yellow Lion in an amount to be determined at trial.

**WHEREFORE**, Royal Flush respectfully requests this Court to Order:

I.   That Defendant Yellow Lion refund Plaintiff Royal Flush $76,345.16;

II.  That Defendant Yellow Lion return the Confidential Information to Plaintiff Royal Flush;

III. That Defendant Yellow Lion pay Plaintiff Royal Flush costs of this action and that a reasonable attorneys' fees be allowed as part of such costs; and

IV. Other such relief as may be just and equitable.

This 19th day of August, 2021

        Respectfully submitted,

        **WARGO & FRENCH LLP**

        */s/ David M. Pernini*
        David M. Pernini
        Georgia Bar No. 572399
        Patrick Fitzgerald
        Georgia Bar No. 405638
        999 Peachtree Street, NE
        26th Floor
        Atlanta, Georgia 30309
        Telephone: 404-853-1500
        Facsimile:  404-853-153

        *Counsel for Plaintiff Royal Flush Plumbing, Inc.*